IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH D. CRONIN, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RENEE F. BERGMANN, et al., | : | No. 14-4663 |
| Defendants. | : | |

## MEMORANDUM

Schiller, J.                                                                              October 16, 2014

      Joseph D. Cronin and his eponymous law firm have sued Renee F. Bergmann, Scott J. Good, and the law firm of Bergmann & Good, LLC, for violations of the Lanham Act, 15 U.S.C. § 1125, as well as unfair competition, trade disparagement, and defamation under Pennsylvania state law. Defendants move to dismiss Plaintiffs' Complaint for failure to state a claim for which relief can be granted. For the following reasons, the Court grants Defendants' motion as to the Lanham Act claim and dismisses this count with prejudice. The Court also dismisses without prejudice Plaintiffs' supplemental state law claims.

I.      BACKGROUND

      Cronin and Bergmann met in 2013 through the Cherry Hill West chapter of Business Network International ("BNI"). (Pls.' Compl. ¶ 12.) BNI is an association of business professionals which encourages its members to refer consumers to each other. (*Id.* ¶ 15.) While each BNI chapter typically limits its membership to one member per profession, Cronin and Bergmann were both permitted to join the Cherry Hill West chapter because their practices focused on distinct fields. (*Id.* ¶ 14 n.1.) The Cherry Hill West chapter has twenty-seven members. (*Id.* ¶ 13.)

In December 2013, after Bergmann's partner left her law firm, Bergmann and Cronin agreed that Cronin, on behalf of the Cronin Law Firm, would enter his appearance and represent Innovative Finishers, Inc. as lead trial counsel in a complex property damage coverage matter. (*Id.* ¶¶ 18-24.) Cronin would be paid $250 per hour for his work for Innovative Finishers. (*Id.* ¶ 21.) Cronin then "jump[ed] full bore into a proverbial hornet's nest of antagonism caused by Bergmann's interaction with defense counsel." (*Id.* ¶ 25.)

By late spring or early summer 2014, Cronin still had not been paid for over 125 hours of work on the Innovative Finishers matter. (*Id.* ¶ 26.) Bergmann avoided paying Cronin and eventually asked him to accept $150 per hour for his work. (*Id.* ¶ 27.) In June or July, Cronin's distrust of Bergmann, who allegedly "brought nothing of meaningful substance to the representation table," grew to such an extent that Cronin notified Innovative Finishers that either he or Bergmann would need to withdraw as counsel of record. (*Id.* ¶¶ 28-29.) When Cronin presented his invoices for legal work to Innovative Finishers, their representative claimed to have never seen them before. (*Id.* ¶ 30.) Shortly thereafter, Innovative Finishers asked Cronin to serve as sole counsel in the coverage matter. (*Id.* ¶ 31.) At some point, Cronin also sent a letter to Bergmann and her new law partner, Good, airing various grievances about their conduct in the Innovative Finishers matter. (*Id.* ¶ 32.)

In response to this series of events, Cronin alleges that Bergmann and Good "commenced a comprehensive scheme to defame Cronin and disparage The Cronin Firm and otherwise to paint each in a damaging false light." (*Id.* ¶ 33.) According to Cronin, Bergmann and Good made false and misleading statements to members of the Cherry Hill West chapter of BNI, a representative of Innovative Finishers, and others, including that: (1) Cronin acted arbitrarily and maniacally in business and attorney-client relationships; (2) Cronin attempted to steal an

important client from Bergmann and Good; (3) Cronin submitted false invoices and inflated his hours worked; (4) Cronin made Bergmann and Good feel unsafe and fearful of attending BNI chapter meetings; and (5) Cronin is sexist. (*Id.* ¶ 34.)

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 260 (3d Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Although the Federal Rules of Civil Procedure impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (holding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit has established a two-part analysis of a motion to dismiss for failure to state a claim. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the possibility of misconduct, the complaint must be dismissed because it has alleged—but failed to show—that the pleader is entitled to relief. *Id.*

### III. DISCUSSION

#### A. Plaintiffs' Lanham Act Claim

The Lanham Act imposes civil liability on:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(B). While the Lanham Act's "commercial advertising or promotion" language does not require Defendants to have engaged in a formal advertising campaign, their representations must constitute: (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy the defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public. *TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 836 F. Supp. 2d 274, 286 (E.D. Pa. 2011).

Here, Plaintiffs have not alleged that Defendants made their comments for the purpose of influencing the members of the BNI Cherry Hill West chapter to use their legal services or to refer future clients to them. There are no allegations that Defendants have obtained pecuniary benefits as a result of making their representations. Allowing Plaintiffs' claim to proceed would effectively transform the Lanham Act into a federal misrepresentation or defamation statute and create a federal cause of action for virtually any injury to commercial reputation. *See Cook Drilling Corp. v. Halco Am., Inc.*, Civ. A. No. 01-2940, 2002 WL 84532, at *7 (E.D. Pa. Jan. 22, 2002) ("The operative congressional concern was not with remedying reputational harms per se, but rather with addressing the deliberate transference by means of misrepresentation of the good will and reputation earned by a party."). Furthermore, Plaintiffs and Defendants were required by BNI bylaws to hold themselves out as specialists in different legal fields. It seems unlikely, therefore, that Defendants would have made comments to their fellow BNI chapter members for the purpose of diverting legal referrals from Plaintiffs to themselves. In any event, the Court finds that Defendants' statements, if true, would merely constitute reputational harm to Plaintiffs and do not demonstrate any intention to encourage BNI members to retain Defendants' services.

In addition, Plaintiffs have not alleged that Defendants' statements were sufficiently disseminated to the relevant purchasing public. Plaintiffs allege that Defendants made their disparaging statements to some of the twenty-seven members of the BNI Cherry Hill West chapter, as well as a representative from Innovative Finishers. Plaintiffs also allege that Defendants repeated these comments to other individuals, whom Plaintiffs are unable to identify. However, the relevant inquiry under the Lanham Act is whether "the contested representations are part of an organized campaign to penetrate the relevant market." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002). While even a small number of

disparaging statements might constitute widespread dissemination if the market for a plaintiff's services is sufficiently limited, *TriState*, 836 F. Supp. 2d at 287, Plaintiffs make no allegations that a substantial amount of their business was generated by referrals from the BNI chapter, or that the chapter has any significant influence on the market for personal injury lawyers. Rather, Plaintiffs' Lanham Act claim is based on an unknown number of isolated statements made by Defendants to BNI chapter members, which may or may not have been republished to potential personal injury clients. Defendants' statements thus were not sufficiently disseminated to the public to constitute "commercial advertising or promotion" under the Lanham Act. *Cf. Fashion Boutique*, 314 F.3d at 57 (concluding that the defendant's twenty-seven misrepresentations to potential customers regarding the quality and authenticity of the plaintiff's products were not "disseminated widely" for Lanham Act purposes, as the plaintiff's market included thousands of consumers). Therefore, Plaintiffs fail to state a claim under the Lanham Act for which relief can be granted.

### B. Plaintiffs' Supplemental State Law Claims

Since there is no diversity jurisdiction,[1] and Plaintiffs' only federal claim has been dismissed, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. 28 U.S.C. § 1367(c)(3). Therefore, these state law claims will be dismissed without prejudice.

## IV. CONCLUSION

Defendants' alleged statements regarding Plaintiffs Cronin and the Cronin Law Firm, even if true, do not constitute "commercial advertising or promotion" under the Lanham Act. Accordingly, Plaintiffs' Lanham Act claim is dismissed with prejudice. The Court also dismisses

---

[1] Suing Good was bad, as it defeated the possibility of diversity jurisdiction over Counts Two and Three.

Plaintiffs' state law claims without prejudice. An Order consistent with this Memorandum will be docketed separately.